UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

NORMA PODBORNY
3832 Wyoming Way, Apt. 2
Racine, Wisconsin 53404

    Plaintiff,

v.                                         Case No.: 17-cv-504

SHANNON SPECIALTY FLOORS, INC.     **JURY TRIAL DEMANDED**
1005 South 60th Street
Milwaukee, Wisconsin 53214

    Defendant.

---

## COMPLAINT

---

COMES NOW Plaintiff, Norma Podborny, by her counsel, WALCHESKE & LUZI, LLC, as and for a claim against Defendant, alleges and shows to the Court as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA").

2. This Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367 because this case involves claims under Wisconsin's Wage Payment and Collection Laws ("WWPCL"), and these claims are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. The unlawful employment practices of which Plaintiff complains occurred within the Eastern District of Wisconsin and therefore venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c).

**PARTIES**

4. Plaintiff, Norma Podborny, is an adult female resident of the State of Wisconsin residing in Racine County with a post office address of 3832 Wyoming Way, Apt. 2, Racine, Wisconsin 53404.

5. Defendant, Shannon Specialty Floors, Inc., was, at all material times herein, a commercial entity with a principal address of 1005 South 60th Street, Milwaukee, Wisconsin 53214.

6. Defendant manufactures, distributes, and sells commercial flooring across the United States.

7. During the relevant time periods as stated herein, Defendant was engaged in "commerce" and/or its employees were engaged in "commerce," as that term is defined under the FLSA.

8. During the relevant time periods as stated herein, Defendant employed more than two (2) employees.

9. During the relevant time periods as stated herein, Defendant's annual dollar volume of sales or business exceeded $500,000.

10. During the relevant time periods as stated herein, Defendant was an "employer" as that term is defined under the FLSA and the WWPCL.

11. During the relevant time periods as stated herein, Ms. Podborny was "employed" by and/or an "employee" of Defendant as these terms are defined under the FLSA and the WWPCL.

## GENERAL ALLEGATIONS

12. On or about October 14, 2013, Defendant hired Ms. Podborny as a Customer Service Representative.

13. On or about March 23, 2017, Ms. Podborny's employment with Defendant ended.

14. During her employment with Defendant, Ms. Podborny performed compensable work in the position of Customer Service Representative.

15. During her employment with Defendant, Ms. Podborny performed compensable work in the position of Customer Service Representative at the direction of Defendant and/or with Defendant's knowledge.

16. In her position as Customer Service Representative from approximately October 14, 2013 to May 2016, Ms. Podborny reported directly to Laura Turek, Customer Service Representative Manager, who reported directly to Ruth Nelson, Controller, who reported directly to Jeff Collum, President, who reported directly to the owners of Defendant.

17. In her position as Customer Service Representative from approximately October 14, 2013 to May 2016, Ms. Podborny performed the following job duties: answering questions from customers via telephone and/or email and entering product information and orders into Defendant's computer system.

18. In approximately May 2016, Defendant terminated Turek's employment.

19. In her position as Customer Service Representative from approximately May 2016 to March 23, 2017, Ms. Podborny reported directly to Nelson, who reported directly to Collum, who reported directly to the owners of Defendant.

20. In her position as Customer Service Representative from approximately May 2016 to March 23, 2017, Ms. Podborny performed the following job duties: answering questions from customers via telephone and/or email; taking orders and entering those orders and other product information into Defendant's computer system; obtaining price quotes from vendors or other third parties; and communicating with customers and other employees of Defendant regarding defective products.

21. During Ms. Podborny's employment with Defendant in her position as Customer Service Representative, she did not direct or supervise the work of any of Defendant's employees.

22. During Ms. Podborny's employment with Defendant in her position as Customer Service Representative, she did not have the authority to make or implement Defendant's policies.

23. During Ms. Podborny's employment with Defendant, having an advanced degree or advanced knowledge in a particular field or subject matter was not a prerequisite or condition of her Customer Service Representative position.

24. During Ms. Podborny's employment with Defendant, the performance of the job duties of her Customer Service Representative position did not require an advanced degree or advanced knowledge in a particular field or subject matter.

25. During Ms. Podborny's employment with Defendant, the performance of the job duties of her Customer Service Representative position did not require special training, experience, or knowledge.

26. During Ms. Podborny's employment with Defendant, the performance of the job duties of her Customer Service Representative position was not original, creative, or artistic.

27. During the entirety of Ms. Podborny's employment with Defendant in her position as Customer Service Representative, she was not an advisor or a consultant to Defendant's customers.

28. During Ms. Podborny's employment with Defendant in her position as Customer Service Representative, she was not given special assignments and tasks by Defendant.

29. During Ms. Podborny's employment with Defendant in her position as Customer Service Representative, she did not regularly or customarily assist the owners of Defendant.

30. During Ms. Podborny's employment with Defendant, the performance of her job duties of her Customer Service Representative position were part of Defendant's product, as opposed to being related to the general administration or operation of Defendant.

31. During Ms. Podborny's employment with Defendant, the performance of her job duties of her Customer Service Representative position demonstrated and exhibited skills, as opposed to the utilization of discretion and independent judgment.

32. During Ms. Podborny's employment with Defendant, the performance (or lack thereof) of her job duties as a Customer Service Representative would not have resulted in Defendant experiencing financial loss.

33. During Ms. Podborny's employment with Defendant, it compensated her via paycheck.

34. During Ms. Podborny's employment with Defendant, it compensated her on a salary basis.

35. From approximately the year 2015 to early February 2016, Defendant compensated Ms. Podborny with a weekly salary of approximately $854.17.

36. From approximately early February 2016 to December 2016, Defendant compensated Ms. Podborny with a weekly salary of approximately $979.165.

37. From approximately January 2017 through the end of Ms. Podborny's employment, March 23, 2017, Defendant compensated her with a weekly salary of approximately $1,000.00.

38. At times from approximately the year 2015 to March 23, 2017, Defendant compensated Ms. Podborny with overtime pay when she worked more than forty (40) hours in a workweek.

39. From approximately the year 2015 to March 23, 2017, Defendant's practice was to treat Ms. Podborny as a salaried, non-exempt employee for compensation purposes.

40. From approximately the year 2015 to March 23, 2017, Defendant's practice was to compensate Ms. Podborny with overtime pay only at Turek's or Nelson's discretion or with Turek's or Nelson's authorization when Ms. Podborny worked more than forty (40) hours in a workweek, failing to properly and lawfully compensate Ms. Podborny with overtime pay for all hours worked in excess of forty (40) in a workweek.

41. From approximately the year 2015 to March 23, 2017, Turek and/or Nelson knew that Ms. Podborny worked more than forty (40) hours in a given workweek and that Ms. Podborny was not compensated by Defendant with overtime pay for all hours worked in excess of forty (40) in a workweek.

42. Defendant's Employee Handbook, titled "Shannon Sales, Inc. Employee Handbook," stated Defendant's policies during Ms. Podborny's employment with Defendant.

43. According to Defendant's Employee Handbook, in the section titled "Recording Your Time," it states: "For payroll purposes, the workweek starts on Monday and ends on Friday."

44. According to Defendant's Employee Handbook, in the section titled "Workweek," it states: "Because of the nature of our business, your work schedule may vary depending on your job. Our normal business hours are 8:00 a.m. to 4:30 p.m., Monday through Friday."

45. During Ms. Podborny's employment with Defendant, its pay periods for compensation purposes was the first through the fifteenth day of every month, and the sixteenth day of every month through the end of that month, regardless of whether the end of the month was the twenty-eighth, thirtieth, or thirty-first day of the month.

46. According to Defendant's Employee Handbook, "NON-EXEMPT EMPLOYEES are entitled to overtime pay as required by applicable federal and state law." (emphasis in original.)

47. According to Defendant's Employee Handbook, "EXEMPT EMPLOYEES … are not entitled to overtime pay, and are not subject to certain deductions to their weekly salary under the corporation's policies." (emphasis in original.)

48. According to Defendant's Employee Handbook regarding "Non-Exempt Employees," it states, in part: "You will be paid semimonthly on the 15th of the month and the last day of the month for the periods which end two days prior to check date." (emphasis in original.)

49. According to Defendant's Employee Handbook regarding "Exempt Employees," it states, in part: "You will be paid semimonthly on the 15th of the month and the last day of the month for the periods which end on the same days." (emphasis in original.)

50. According to Defendant's Employee Handbook:

> There may be times when you will need to work overtime so that we may meet the needs of our customers. Non-exempt employees must have all overtime approved in advance by the office manager. Non-exempt employees will be paid at a rate of time and one-half their regular hourly rate for hours worked in excess of 40 hours in a workweek, unless state law provides otherwise. Holidays, vacation, sick days and bereavement leave count as days worked when computing weekly overtime.

51. During her employment with Defendant, Ms. Podborny's normal or customary work schedule was Monday through Friday, 8:00 a.m. to 4:30 p.m., with a thirty (30) minute unpaid lunch or meal break.

52. During her employment with Defendant, Ms. Podborny was normally or customarily scheduled to work at least forty (40) hours per week.

53. In practice, Ms. Podborny worked in excess of forty (40) hours per workweek nearly every week she was employed by Defendant in her position as Customer Service Representative.

54. In practice, Defendant had knowledge that Ms. Podborny worked in excess of forty (40) hours per workweek nearly every week she was employed by Defendant in her position as Customer Service Representative.

55. In practice, Ms. Podborny performed compensable work during her a thirty (30) minute lunch or meal break nearly every day she was employed by Defendant in her position as Customer Service Representative.

56. In practice, Ms. Podborny did not receive a work free lunch or meal break of at least thirty (30) consecutive minutes nearly every day she was employed by Defendant in her position as Customer Service Representative.

57. In practice, Defendant had knowledge that Ms. Podborny performed compensable work during her a thirty (30) minute lunch or meal break nearly every day she was employed by Defendant in her position as Customer Service Representative.

58. During her employment with Defendant, Ms. Podborny regularly arrived to work between approximately 7:00 a.m. and 7:30 a.m. on every normally scheduled work day (Mondays through Fridays) – except those work days from Mondays through Fridays when "special projects" were assigned, in which case Ms. Podborny arrived to work at Defendant between approximately 6:00 a.m. and 6:30 a.m.

59. During her employment with Defendant, Ms. Podborny regularly arrived to work between approximately 7:00 a.m. and 7:30 a.m. on every scheduled work day (Mondays through Fridays) and immediately began performing compensable work.

60. In practice, when Ms. Podborny arrived to work at Defendant between approximately 7:00 a.m. and 7:30 a.m. on a normally scheduled work day, she: (1) used her key card to access and enter Defendant's building; (2) walked to her desk; and (3) logged-in to Microsoft Outlook and Dancik, Defendant's order entry system, with a unique username and password; and (4) immediately began performing compensable work, such as sending and receiving emails, entering orders and checking stock in Dancik, and physically pulling and reviewing customers' files at Defendant.

61. During her employment with Defendant, Defendant had knowledge that Ms. Podborny was regularly performing work prior to her 8:00 a.m. scheduled start time on every scheduled work day (Mondays through Fridays).

62. During her employment with Defendant, Ms. Podborny regularly performed compensable work past her 4:30 p.m. scheduled end time on at least one scheduled work day (Mondays through Fridays) per week.

63. During her employment with Defendant, Ms. Podborny regularly performed compensable work until approximately 5:30 p.m. on at least one scheduled work day (Mondays through Fridays) per week.

64. During her employment with Defendant and with its knowledge, Ms. Podborny regularly performed compensable work past her 4:30 p.m. scheduled end time on at least one scheduled work day (Mondays through Fridays) per week.

65. During Ms. Podborny's employment with Defendant, it did not track or record her regularly scheduled work hours each week – from 8:00 a.m. to 4:30 p.m., Mondays through Fridays.

66. During Ms. Podborny's employment with Defendant, it required her to make up time during the workweek if she was unable to work her regularly scheduled hours – from 8:00 a.m. to 4:30 p.m. – for that workweek. For example, if Ms. Podborny had to attend a medical appointment for two hours on a Tuesday from 1:00 p.m. to 3:00 p.m., Defendant required Ms. Podborny to perform two (2) additional hours of work during that workweek to make up for the two hours she was not working while attending her medical appointment.

67. During Ms. Podborny's employment with Defendant, its policy in practice was to compensate Ms. Podborny for work performed beyond forty (40) hours in a workweek or beyond her regular work schedule, Mondays through Fridays, 8:00 a.m. to 4:30 p.m. (hereinafter simply "overtime work performed"), only if the work performed was approved or authorized by Turek and/or Nelson prior to the performance of the work, such as when required to work "special assignments."

68. During Ms. Podborny's employment with Defendant, its policy in practice was to not compensate Ms. Podborny for overtime work performed if the work performed was not approved or authorized by Turek and/or Nelson prior to the performance of the work.

69. During Ms. Podborny's employment with Defendant, its policy in practice was to have Ms. Podborny record her previously approved or authorized overtime work performed via handwritten "overtime sheets."

70. During Ms. Podborny's employment with Defendant and when her overtime work performed was previously approved or authorized by Turek and/or Nelson, Defendant's policy in practice was to have Ms. Podborny physically provide Nelson with these completed "overtime sheets" each pay period, or three days before Defendant's "pay day."

71. During Ms. Podborny's employment with Defendant, its policy in practice was to not have Ms. Podborny record her overtime work performed via handwritten "overtime sheets" if the overtime work performed was not previously approved or authorized by Turek and/or Nelson.

72. At times during her employment with Defendant, Ms. Podborny recorded her overtime work performed via handwritten "overtime sheets" even if the overtime work performed was not previously approved or authorized by Turek and/or Nelson.

73. At times during Ms. Podborny's employment with Defendant when she recorded her overtime work performed via handwritten "overtime sheets" during workweeks when the overtime work performed was not previously approved or authorized by Turek and/or Nelson, they did not accept Ms. Podborny's completed "overtime sheets."

74. When Ms. Podborny recorded her overtime work performed via handwritten "overtime sheets" during her employment with Defendant during workweeks when the overtime work performed was not previously approved or authorized by Turek and/or Nelson, Defendant did not compensate Ms. Podborny for the overtime work performed.

75. From approximately the year 2015 to May 2016, Turek and/or Nelson occasionally approved or authorized Ms. Podborny to perform overtime work prior to the performance of the work and, during these instances, Ms. Podborny completed "overtime sheets" for the overtime work performed, physically gave them to Nelson each "pay period," and Defendant compensated Ms. Podborny for the overtime work performed.

76. From approximately the year 2015 to May 2016, Ms. Podborny generally did not complete "overtime sheets" for overtime work performed if the performance of the work was not previously approved or authorized by Turek and/or Nelson.

77. From approximately the year 2015 to May 2016, Ms. Podborny worked in excess of forty (40) hours per workweek at Defendant every workweek.

78. From approximately the year 2015 to May 2016, Ms. Podborny performed compensable work during her a thirty (30) minute lunch or meal break nearly every day she was performed compensable work at Defendant.

79. From approximately the year 2015 to May 2016 and although Ms. Podborny generally did not complete "overtime sheets" for overtime work performed if the performance of the work was not previously approved or authorized by Turek and/or Nelson, they had knowledge that Ms. Podborny was in fact performing this compensable overtime work prior to her 8:00 a.m. regularly scheduled start time (Mondays through Fridays) and/or after her 4:30 p.m. regularly scheduled end time (Mondays through Fridays).

80. During Ms. Podborny's employment with Defendant, Turek and Nelson arrived to work at Defendant at approximately 8:00 a.m., Mondays through Fridays.

81. During Ms. Podborny's employment with Defendant until approximately May 2016, Turek's desk was directly next to Ms. Podborny's.

82. During Ms. Podborny's employment with Defendant, Turek had to walk directly by Ms. Podborny's desk in order to reach her desk.

83. During Ms. Podborny's employment with Defendant, Nelson had to walk directly by Ms. Podborny's desk in order to reach her office.

84. During Ms. Podborny's employment with Defendant, Ms. Podborny was regularly at her desk and performing compensable work when Turek and Nelson arrived to work at approximately 8:00 a.m., Mondays through Fridays.

85. From approximately May 2016 to March 23, 2017, Nelson did not approve or authorize Ms. Podborny to perform overtime work prior to the performance of the work.

86. From approximately May 2016 to March 23, 2017, Ms. Podborny generally did not complete "overtime sheets" for overtime work performed.

87. From approximately May 2016 to March 23, 2017 and although Ms. Podborny generally did not complete "overtime sheets" for overtime work performed, Nelson had knowledge that Ms. Podborny was in fact performing this compensable overtime work prior to her 8:00 a.m. regularly scheduled start time (Mondays through Fridays) and/or after her 4:30 p.m. regularly scheduled end time (Mondays through Fridays).

88. From approximately May 2016 to March 23, 2017, Ms. Podborny worked in excess of forty (40) hours per workweek at Defendant every workweek.

89. From approximately May 2016 to March 23, 2017, Ms. Podborny performed compensable work during her a thirty (30) minute lunch or meal break nearly every day she was performed compensable work at Defendant.

90. On one occasion in May 2016, Ms. Podborny physically handed her "overtime sheet" to Nelson with her "7:30 a.m. to 8:00 a.m." times noted for each day during that pay period. Ms. Podborny asked Nelson, "Do I need to keep turning in my overtime sheets because you know I'm coming in at 7:30 a.m. and working," or words to that effect. Nelson responded, "No, there will be no more overtime unless I approve it ahead of time," or words to that effect, meaning that Defendant would not compensate Ms. Podborny for working in excess of forty (40) hours in a workweek unless she (Nelson) approved or authorized the work prior to performance of the work.

91. During Ms. Podborny's employment with Defendant, it suffered or permitted her to work without appropriately and lawfully compensating her for all worked performed, including at an overtime rate of pay for each hour worked in excess of forty (40) hours in a workweek.

92. During Ms. Podborny's employment with Defendant, her paychecks did not properly or lawfully compensate her at an overtime rate of pay for all hours worked in excess of forty (40) hours in a workweek.

93. Defendant knew or should have known that Ms. Podborny must be compensated for all work performed, including with overtime pay at a rate of time and one half for each hour worked (and for all hours Defendant suffered or permitted her to work) in excess of forty (40) hours in a workweek, in accordance with the FLSA and the WWPCL.

## FIRST CAUSE OF ACTION – FLSA VIOLATIONS

94. Ms. Podborny re-alleges and incorporates paragraphs 1-93 of this Complaint by reference.

95. Section 206(a)(1) of the FLSA regulates, among other things, the payment of an minimum wage by employers whose employees are engaged in commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.

96. Section 207(a)(1) of the FLSA regulates, among other things, the payment of an overtime premium by employers whose employees are engaged in commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.

97. At all times material herein, Ms. Podborny was entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201 *et seq.*

98. Defendant violated the FLSA by not compensating Ms. Podborny with overtime premium pay of time and one half for each hour worked in excess of forty (40) hours in a workweek.

99. Defendant intentionally violated 29 U.S.C. § 215(a) by failing to compensate Ms. Podborny with overtime pay at a rate of time and one half for each hour worked in excess of forty (40) hours in a workweek.

100. Defendant's failure to properly and legally compensate Ms. Podborny for all compensable work performed was willfully perpetrated. Defendant has neither acted in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Ms. Podborny is entitled to recover an award of liquidated

damages in an amount equal to the amount of unpaid overtime premium pay described above pursuant to Section 216(b) of the FLSA. Alternatively, should the Court find that Defendant acted reasonably and with good faith in failing to pay overtime premium pay wages, Ms. Podborny is entitled to an award of pre-judgment interest at the applicable legal rate.

101. As a result of the aforesaid willful violations of the FLSA's provisions, overtime compensation has been unlawfully withheld from Ms. Podborny by Defendant.

102. Ms. Podborny is entitled to damages equal to the mandated overtime premium pay within the three years preceding the date of filing of the Complaint, ECF No. 1, plus periods of equitable tolling because Defendant acted willfully and knew or showed reckless disregard of whether its conduct was prohibited by the FLSA and otherwise engaged in wrongful conduct that prevented Ms. Podborny from asserting his claims against Defendant.

103. Pursuant to the FLSA, 29 U.S.C. § 216(b), successful Plaintiffs are entitled to reimbursement of the costs and attorneys' fees expended in successfully prosecuting an action for unpaid wages and overtime wages.

**SECOND CAUSE OF ACTION – WWPCL OVERTIME VIOLATIONS**

104. Ms. Podborny re-alleges and incorporates paragraphs 1-103 of this Complaint by reference.

105. At all times material herein, Ms. Podborny was an employee of Defendant within the meaning of Wis. Stat. § 109.01(1r), Wis. Stat. §103.001(5), and Wis. Stat. §104.01(2)(a).

106. At all times material herein, Defendant was an employer of Ms. Podborny within the meaning of Wis. Stat. § 109.01(2), Wis. Stat. §103.001(6), Wis. Stat. §104.01(3)(a), and Wis. Admin. Code § DWD 272.01(5).

107. At all times material herein, Defendant employed Ms. Podborny within the meaning of Wis. Stat. §§109.01 *et seq.*, 103.01 *et seq.*, 104.01 *et seq.*, and Wis. Admin. Code § DWD 272.01.

108. During Ms. Podborny's employment with Defendant, Ms. Podborny worked hours in excess of forty (40) per workweek for which she was not compensated time and one half.

109. At all times material herein, Ms. Podborny regularly performed activities that were an integral and indispensable part of her principal activities without receiving compensation for these activities at an overtime rate of pay at time and one half.

110. The foregoing conduct, as alleged above, constitutes willful violations of the WWPCL.

111. As set forth above, Ms. Podborny sustained losses in her compensation as a proximate result of Defendant's violations. Accordingly, Ms. Podborny seeks damages in the amount of her unpaid compensation, injunctive relief requiring Defendant Company to cease and desist from its violations of the Wisconsin laws described herein and to comply with them, and such other legal and equitable relief as the Court deems just and proper. Under Wis. Stat. § 109.11, Ms. Podborny may be entitled to liquidated damages equal and up to fifty percent (50%) of the unpaid wages.

112. Ms. Podborny seeks recovery of attorneys' fees and the costs of this action to be paid by Defendant Company, pursuant to the WWPCL.

## THIRD CAUSE OF ACTION – WWPCL FAILURE TO PAY AN AGREED UPON WAGE VIOLATIONS

113. Ms. Podborny re-alleges and incorporates paragraphs 1-112 of this Complaint by reference.

114. Ms. Podborny was entitled payment from Defendant at the agreed upon wage, as defined in Wis. Stat. § 109.01(3), for each hour worked pursuant to Wis. Stat. § 109.03.

115. Defendant violated the WWPCL by failing to properly compensate Ms. Podborny for each hour worked by her through its impermissible and unlawful policies and practices described above.

116. As set forth above, Ms. Podborny sustained losses in her compensation as a proximate result of Defendant's violations. Accordingly, Ms. Podborny seeks damages in the amount of her unpaid compensation, injunctive relief requiring Defendant Company to cease and desist from its violations of the Wisconsin laws described herein and to comply with them, and such other legal and equitable relief as the Court deems just and proper. Under Wis. Stat. § 109.11, Ms. Podborny may be entitled to liquidated damages equal and up to fifty percent (50%) of the unpaid wages.

117. Ms. Podborny seeks recovery of attorneys' fees and the costs of this action to be paid by Defendant Company, pursuant to the WWPCL.

**WHEREFORE**, the Plaintiff respectfully requests that this Court:

1. Order Defendant to make Plaintiff whole by reimbursing her for unpaid wages, including but not limited to overtime wages and pre-judgment and post-judgment interest, for all times spent performing compensable work for which she was not properly paid as provided for by the FLSA and WWPCL;

2. Grant to Plaintiff attorneys' fees, costs, and disbursements as provided by statute;

3. Grant to Plaintiff liquidated damages against Defendant; and

4. Grant to Plaintiff whatever other relief this Court deems necessary and proper.

**PLAINTIFF DEMANDS A JURY AS TO ALL TRIABLE ISSUES.**

Dated this 7th day of April, 2017.

                WALCHESKE & LUZI, LLC
                Counsel for Plaintiff

                **s/ *Scott S. Luzi***
                James A. Walcheske, State Bar No. 1065635
                Scott S. Luzi, State Bar No. 1067405
                Jesse R. Dill, State Bar No. 1061704

WALCHESKE & LUZI, LLC
15850 W. Bluemound Road, Suite 304
Brookfield, Wisconsin 53005
Phone: (262) 780-1953
Fax: (262) 565-6469
jwalcheske@walcheskeluzi.com
sluzi@walcheskeluzi.com
jdill@walcheskeluzi.com